United States District Court
Southern District of Texas
**ENTERED**
April 27, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| POLAR PRO FILTERS INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-19-1706 |
| | § | |
| FROGSLAYER, LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

In this contract-breach and fraudulent-misrepresentation action, Polar Pro Filters Inc. alleges that FrogSlayer, LLC failed to perform its work on a video-editing computer program within the time and budget set out in the parties' October 2017 Software Consulting Agreement. Polar Pro alleges that it has paid FrogSlayer approximately $350,000, but it has not received a functional program. Polar Pro also alleges that FrogSlayer refused to continue working on the project under the Agreement unless Polar Pro made additional payments. Polar Pro asserts claims for contract breach, negligent misrepresentation, fraud, and violations of the Texas Deceptive Trade Practices Act.

FrogSlayer moved for a more definite statement, which was denied, and to dismiss, which was denied in part for the contract-breach claims and granted in part for some of the fraud-based claims. (Docket Entry Nos. 11, 14, 19, 27). Polar Pro amended its fraud-based claims. (Docket Entry No. 28). FrogSlayer now moves to dismiss both Polar Pro's amended fraud claims and contract-breach claims. (Docket Entry No. 31).

Based on the pleadings, the motion, and responses, the record, and the applicable law, the court: (1) denies FrogSlayer's motion to dismiss the contract-breach claims as waived by Federal

Rule of Civil Procedure 12(g), and, alternatively, because Polar Pro has stated a claim and FrogSlayer's "time-and-materials" argument is inapplicable in this context; and (2) denies FrogSlayer's motion to dismiss the fraud-based claims because the allegations meet the Rule 9(b) pleading standard, and the economic-loss doctrine does not apply. The reasons for these rulings are explained below.

**I.     Background**

The facts are taken from the amended complaint allegations. Polar Pro develops and sells camera software for various devices, including drones and cellphones. (Docket Entry No. 28 at ¶ 6). In August 2017, Polar Pro contacted FrogSlayer, a software developer, about "the possibility of developing a proprietary, computer-based video editing program." (*Id.* at ¶¶ 7–8). FrogSlayer's CEO, Ross Morel, told Polar Pro that FrogSlayer had experience in video-editing and media management. (*Id.* at ¶ 9).

On August 29, after "preliminary market research," Morel told Polar Pro that "there's a good opportunity, and need, in this space" and that "[b]ased on [his] team's experience in this space as well as [its] history of delivering consumer-grade desktop products, we really think this is a project we can knock out of the park." (*Id.* at ¶ 10).

Polar Pro alleges that it relied on Morel's statements in deciding to hire FrogSlayer to develop the software program. (*Id.* at ¶ 11). Polar Pro told FrogSlayer that it liked the "design and style" of Apple iMovie and some of the features of Adobe Premiere Pro. (*Id.* at ¶ 13). Polar Pro and FrogSlayer discussed specifications and features for the planned software program throughout September 2017. (*Id.* at ¶ 14). On October 7, they "entered into a Software Consulting Agreement where FrogSlayer agreed to provide consulting and software development services described in Statements of Work." (*Id.* at ¶ 15; Docket Entry No. 19-1).

FrogSlayer sent Polar Pro a "Project Charter" on December 13, 2017, naming the Project "The Ripper," and detailing "approximately eight months of work for a total cost of $262,520." (Docket Entry No. 28 at ¶¶ 16–17; Docket Entry No. 19-2). Polar Pro agreed that FrogSlayer could proceed to work on the software program based on the estimate in the Project Charter. (Docket Entry No. 28 at ¶ 18). The Charter summarized the Project's purpose and scope, noting that the goal is for "PolarPro customers [to] easily create video compositions and feel like they are using a 'pro level' piece of software." (Docket Entry No. 19-2 at 3). The Charter specified that the Project was not to create software that would "attempt to compete with Adobe Premier, FinalCut Pro and other professional level video editing applications." (*Id.* at 4). The Charter also included a list of key Project processes, requirements, and technical design elements. (*Id.* at 5–11). On January 25, 2018, FrogSlayer software developer, Abram Krislock, sent Polar Pro a "Roadmap" listing "the features the program would have." (Docket Entry No. 28 at ¶ 19).

On June 12, 2018, Polar Pro told FrogSlayer that "version one of The Ripper project was not close to working," even though "$235,000 had already been paid of the $262,520 cost estimate." (*Id.* at ¶ 21). On June 17, FrogSlayer's CEO, Morel, admitted to Polar Pro that "hard facts" had not initially been "presented" and "sincerely apologize[d] for the delay." (*Id.* at ¶ 22). Morel stated that "version one . . . would most likely cost [an additional] $106,785 to complete with approximately eleven weeks of schedule remaining," as long as the scope and requested features were not changed, and that "FrogSlayer will agree to cover all costs exceeding our likely estimate [of $106,785]." (*Id.*). Relying on Morel's statements and "likely" estimate, Polar Pro instructed FrogSlayer to continue working on The Ripper, thanking FrogSlayer for "ensuring [Polar Pro's] cost to complete [version one] does not exceed: $106,785." (*Id.* at ¶ 23).

3

FrogSlayer sent Polar Pro an updated Roadmap on July 9, 2018. (*Id.* at ¶ 24). This update color-coded various features, indicating which ones would be (green), could be (yellow), and would not be (red) in version one. (*Id.*). That same day, Jeff Overall, Polar Pro's CEO, demanded that many features in the yellow and red categories be in version one, and FrogSlayer agreed. (*Id.* at ¶¶ 25–26). On October 2, "FrogSlayer communicated to Polar Pro that it would waive any further payments regarding its work on version one of The Ripper project because 'as per the agreement sent by Mr. Morel on June 18, 2019[,]' the $106,785 budget estimate had already been fulfilled and paid by Polar Pro." (*Id.* at ¶ 27 (alterations omitted)).

On January 18, 2019, Polar Pro asked FrogSlayer how the "performance (e.g.[,] speed)" of version one "would be judged." (*Id.* at ¶ 28). FrogSlayer responded on January 30, "for the first time since The Ripper project had been commenced," that OpenShot, a "free, open-source, video editing program," would be the benchmark. (*Id.* at ¶ 29). Polar Pro CEO Jeff Overall responded that this program "was not a viable product or benchmark to The Ripper Project." (*Id.* at ¶ 30). In Polar Pro's view, "iMovie and DaVinci Resolve" were the proper benchmarks. FrogSlayer's software developer, Jacob Stone, agreed. (*Id.* at ¶ 32).

In February 2019, FrogSlayer "refused to perform any further work on The Ripper project without additional pay—contrary to its June 17, 2018 communication." (*Id.* at ¶ 33). FrogSlayer told Polar Pro that the "additional costs necessary to complete version one of The Ripper Project would be another $210,000–$390,000 and an additional six to nine months of work." (*Id.*). Morel told Polar Pro that FrogSlayer "had 'failed to navigate the risks upfront'" and that "mistakes were made early-on in the project." (*Id.* (alterations omitted)).

According to the amended complaint:

> The last version one demo of The Ripper Project provided to Polar Pro fails to provide nearly every feature in the 'in scope' section of the Roadmap and also fails to provide most of the features in the 'maybe in scope' section of the Roadmap. The last version one demo of the Ripper Project failed to meet the requirements and functionalities set out by the Roadmap. The last version one demo runs at a slower rate than industry standards and also crashes when certain functions are activated.
> . . .
> The last version one demo of The Ripper Project has no commercial value and there is no market in which Polar Pro can sell a defective software program to recoup any cost. It cannot be sold to customers and would not even be able to be given away due to its speed, the program crashing and lack of functionalities. Polar Pro has received nothing viable in return for its payments made to FrogSlayer.

(*Id.* at ¶¶ 34–35).

FrogSlayer moved for a more definite statement under Rule 12(e) in response to Polar Pro's original complaint. (Docket Entry No. 11). The court denied FrogSlayer's motion, finding that the complaint was intelligible and capable of providing sufficient notice of the claims for FrogSlayer to answer. (Docket Entry No. 14). FrogSlayer then moved to dismiss the original complaint for failure to state a claim under Rule 12(b)(6). (Docket Entry No. 19). The court denied FrogSlayer's motion, in part, for the contract-breach claim. (Docket Entry No. 27 at 13). The court found that Polar Pro's claims were based on three statements: (1) on August 29, 2017, FrogSlayer stated that it had done preliminary market research on the Project and could complete it based on its team's experience; (2) on January 25, 2018, FrogSlayer emailed Polar Pro the Roadmap, detailing the features the program would have; and (3) on June 17, 2018, FrogSlayer's CEO, Ross Morel, emailed Polar Pro, stating that "hard facts were not presented" to Polar Pro and that it would need more time and money to complete the Project. (*Id.* at 11).

The court granted FrogSlayer's motion to dismiss the original complaint as to the fraud-based claims relating to the statements made before the Agreement about FrogSlayer's capabilities, and to the statements made after the Agreement about the project's functionalities. (*Id.* at 13). The court denied FrogsSlayer's motion to dismiss the fraud-based claims relating to Morel's

5

statement that FrogSlayer did not know the "hard facts" before the Agreement and would need more time and money to complete their Project. (*Id.*). The court also denied FrogSlayer's motion to dismiss the contract-breach claim. (*Id.* at 10).

Polar Pro filed its first amended complaint, adding details to its fraud-based claims. (Docket Entry No. 28). FrogSlayer again moved to dismiss both the fraud and contract claims. (Docket Entry No. 31). FrogSlayer argues that Polar Pro's amended complaint "fails to assert a single claim upon which relief can be granted." (Docket Entry No. 31 at 1). Polar Pro responded, and FrogSlayer replied. (Docket Entry Nos. 32, 33). The parties' arguments are analyzed under the legal standards that apply.

## II. The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

6

The court should generally give a plaintiff at least one chance to amend under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile. *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 232 (5th Cir. 2012); *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) ("[Rule 15(a)] evinces a bias in favor of granting leave to amend.") (quotation omitted); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). "Whether leave to amend should be granted is entrusted to the sound discretion of the district court." *Pervasive Software*, 688 F.3d at 232.

In considering a motion to dismiss for failure to state a claim, the court is to consider "the contents of the pleadings, including attachments." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Documents attached to a motion to dismiss are "considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." *Id.* at 498–99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). The court may also "take judicial notice of matters of public record." *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

**III.     Analysis**

FrogSlayer moved to dismiss all of Polar Pro's causes of action under Rule 12(b)(6). Before addressing each of FrogSlayer's arguments, the court first considers Polar Pro's argument that FrogSlayer waived some of its arguments by failing to raise them in an earlier motion.

**A.     Waiver**

Polar Pro argues that FrogSlayer's arguments on the contract claim and the arguments on the fraud claims relating to FrogSlayer's CEO's statements about the additional time and money required to complete the Project are waived because these arguments were available to Frogslayer when it first moved to dismiss, but were not presented. (Docket Entry No. 32 at 4). Polar Pro

7

characterizes FrogSlayer's strategy as "to piecemeal various arguments in separate motions which inevitably prolong the progression of a case." (*Id.*). FrogSlayer responds that it is entitled to raise these arguments as a defense or objection to the amended complaint. (Docket Entry No. 33 at 2–3).

Rule 12(g)(2) states that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." FED. R. CIV. P. 12(g)(2). Rule 12(h)(2) provides an exception, allowing failure to state a claim to be raised: "(A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c) or (C) at trial." FED. R. CIV. P. 12(h)(2). None of the Rule 12(h)(2) exceptions apply here.

The court addressed this issue in its October 2019 opinion, explaining that courts have allowed a second motion to dismiss based on an argument in a second motion when the motion is presented under Rule 12(c) as a motion for judgment on the pleadings, even if the argument could have been raised in an earlier motion to dismiss under Rule 12(b)(6). (Docket Entry No. 27 at 6–8). But in *Doe v. Columbia-Brazoria Independent School District*, the Fifth Circuit noted that there "was no harm in allowing the second motion." 855 F.3d 681, 686 (5th Cir. 2017). Other courts have similarly permitted successive motions "when the problem [Rule] 12(g) was designed to prevent—unnecessary delay—was not a concern." *Stoffels ex rel., SBC Concession Plan v. SBC Commc'ns, Inc.*, 430 F. Supp. 2d 642, 648 (W.D. Tex. 2006); *see also Wells Fargo Bank, N.A., v. Peirce*, No. 4:16-CV-98, 2016 WL 4734634, at *11 n.4 (S.D. Tex. Aug. 12, 2016), *report and recommendation adopted*, No. 4:16-CV-98, 2016 WL 4733162 (S.D. Tex. Sept. 7, 2016) (permitting a successive motion to dismiss when delay was not a concern because the court had not ruled on any of the pending motions to dismiss).

FrogSlayer cites *Stoffels* in support of its position, but it does not respond to Polar Pro's arguments about delay. (Docket Entry No. 33 at 4). The court notes that Polar Pro's amended complaint did not change the allegations central to the court's denial of FrogSlayer's first motion to dismiss—allegations about the contract breach and fraud based on Morel's statements. FrogSlayer's defenses raised in the present motion were fully available to it in its earlier motion to dismiss, but were not raised. As a result, Polar Pro did not have notice of the argument needed to amend to address these alleged pleading deficiencies. FrogSlayer also moved to stay discovery until this motion was decided, further delaying resolution of the case on the merits.

FrogSlayer's arguments about contract breach and the fraud based on Morel's statements about the need for additional time and money were waived. These arguments were available to FrogSlayer when it filed both of its earlier motions challenging the pleadings. FrogSlayer's present motion to dismiss the contract-breach claim is also denied under Rule 12(b)(6), as explained below.

**B.    The Contract-Breach Claim**

FrogSlayer argues that Polar Pro cannot state a plausible breach-of-contract claim because the parties' Agreement was a time-and-materials contract. (Docket Entry No. 31 at 4). FrogSlayer argues that "[u]nlike a purchase-and-sale agreement or a construction contract, which both have defined end dates upon which delivery or completion must take place, the Contract at issue is a professional services contract premised on a time-and-materials basis void of any requirement obligating FrogSlayer to deliver or complete the Ripper by or on a defined date." (*Id.* at 5). Polar Pro responds that FrogSlayer "has failed to cite to any legal authority for the proposition that it's asserting – where relief cannot be granted if a software consulting contract between two private entities is based on a time and material basis." (Docket Entry No. 32 at 7).

9

FrogSlayer argues that a time-and-materials contract is "typically used when a project is riddled with unknowns and effectively impossible to accurately estimate the extent or duration of work or costs needed to complete the project." (Docket Entry No. 31 at 5). FrogSlayer cites two sets of authorities to support this argument: 48 C.F.R. § 16.601(c); and *Statia Terminals N.V. v. Huber Inc.*, No. Civ.A. 95-1633, 1998 WL 560358 (E.D. La. Aug. 31, 1998).

The regulation, 48 C.F.R. § 16.601, relates to the Federal Acquisition Regulations System, which governs federal agencies' acquisitions of goods and services by contract using appropriated funds. *See* 48 C.F.R. §§ 1.101, 1.102, and 2.101. This case involves an agreement between two private parties. The Federal Acquisition Regulations System does not apply.

*Statia Terminals N.V. v. Huber Inc.* is no more helpful. In that case, the owner of a multipurpose maintenance and spill-response vessel sued one of its suppliers under admiralty jurisdiction. 1998 WL 560358 at *1. FrogSlayer relies on the part of the decision stating that the project at issue "was riddled with unknowns, and thus, it was impossible to effect the repair and conversion of the [vessel] on any basis other than a time and materials basis." *Id.* at *9. But the *Statia* court did not broadly hold that time-and-materials contracts could not give rise to breach-of-contract claims. Instead, the court looked to the contract language to see if it evidenced the parties' intent to set a project-completion date. *Id.* at *10. The court found that the contract's "time and materials basis neither served to expedite the repair and conversion nor to ensure the [vessel]'s arrival" by a certain date. *Id.* Because there was no completion date, there was no breach from delay. *Id.* FrogSlayer does not cite authorities supporting its argument that all time-and-materials contracts generally preclude breach-of-contract claims.

Even if the court found that the Agreement was intended to be a time-and-materials contract with no expected completion date, Polar Pro's breach-of-contract claim is not only based on a

10

missed completion deadline. The breaches alleged include that FrogSlayer "failed to develop a viable software program with the functionalities of version one as outlined in the contract," (Docket Entry No. 28 at ¶ 42).

The amended complaint states a plausible claim for breach of contract under Texas law. (*See* Docket Entry No. 27 at 8). FrogSlayer's motion to dismiss the contract-breach claim is denied.

### C. The Fraud-Based Claims

FrogSlayer argues that court should dismiss Polar Pro's fraud allegations with prejudice because they do not meet Rule 9(b)'s heightened pleading standard and are barred by the Texas economic-loss doctrine. (Docket Entry No. 31 at 6). Polar Pro responds that its amended complaint meets the Rule 9(b) standard, and that the economic-loss doctrine does not bar its fraud claim. (Docket Entry No. 32 at 9–14).

In the October 2019 opinion, this court explained the requirements for alleging fraud in federal court, stating that to satisfy Rule 9(b), a plaintiff must "state the who, what, when, where, and how of the alleged fraud." (*See* Docket Entry No. 27 at 10 (quoting *Musket Corp. v. Suncor Energy (U.S.A.) Mktg., Inc.*, 759 F. App'x 280, 286 (5th Cir. 2019)). FrogSlayer argues that Polar Pro's amended complaint fails to meet this pleading standard because it "uses *ipse dixit* allegations to explain *how* these statements were allegedly fraudulent." (Docket Entry No. 31 at 7). As an example, FrogSlayer points to Polar Pro's allegation that "[u]pon information and belief, FrogSlayer did not have experience in native video editing software development" as an example of a "legal conclusion couched as a factual allegation." (*Id.*). Because the "how" of the fraud is pleaded as a legal conclusion, FrogSlayer argues, the amended complaint does not meet the federal pleading standard. (*Id.*).

Polar Pro responds that it has met its Rule 9(b) burden and that its "allegations that FrogSlayer misrepresented its experience and did not perform market research based upon information and belief are allowed and should survive a motion to dismiss." (Docket Entry No. 32 at 9). Polar Pro cites *In re Key Energy Services, Inc. Securities Litigation*, 166 F. Supp. 3d 822, 830 (S.D. Tex. 2016), in which the court explains that "[t]he Fifth Circuit, although construing Rule 9(b) strictly, has recognized an exception and permits the requirements to be 'relaxed' where facts relating to the fraud are 'peculiarly within the perpetrator's knowledge'; then the alleged fraud 'may be pled on information and belief, provided the plaintiff sets forth the factual basis for his belief.'" (quoting *United States ex rel. Russell v. Epic Healthcare Mgmt. Grp.*, 193 F.3d 304, 308 (5th Cir. 1999) (*abrogated on other grounds by United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 931 (2009))). Polar Pro has pleaded the "who, what, where, and when" of fraud with the required particularity, identifying the individuals who made the allegedly fraudulent representations, the dates of the representations, and the means of communication. Polar Pro's pleading alleges the factual basis for an inference that the allegedly fraudulent statements were false.

FrogSlayer next argues that even if Polar Pro's fraud allegations meet the Rule 9(b) standard, "relief cannot be granted under Polar Pro's tort claims . . . as such relief is barred by the economic loss doctrine." (Docket Entry No. 31 at 8). The Texas economic-loss doctrine "precludes a party from bringing a tort action based only on a defendant's breach of duties imposed by a contract, instead limiting plaintiffs to a common law breach of contract suit or its statutory equivalent." *Correct RX Pharmacy Servs., Inc. v. Cornerstone Automation Sys., L.L.C.*, 945 F.3d 423, 428 (5th Cir. 2019). "But the contractual economic loss rule does not bar all tort claims between contracting parties." *Id.* at 429. The rule does not bar tort "claims that are sufficiently

12

independent from the underlying contract." *Id.* "Under this formulation, the contractual economic loss rule bars a tort claim when there would be no basis for relief if the parties had not entered into a contract and both parties' performance had instead been rendered gratuitously." *Id.* The Texas Supreme Court equates "this inquiry about the source of the breached legal duty with an analysis of the 'nature of the injury' asserted and of the remedy sought by the plaintiff." *Id.*

Under Texas law, parties have independent legal duties to avoid fraud, negligent misrepresentation, and violations of the Texas Deceptive Trade Practices Act, precluding the application of the economic-loss doctrine in some cases. *See Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 178 (5th Cir. 2016) (recognizing that the economic-loss rule does not always extend to fraud and fraudulent-inducement claims); *Correct RX*, 945 F.3d at 430 ("Under the negligent misrepresentation framework set forth in section 552 of the SECOND RESTATEMENT, which the Texas Supreme Court adopted in *Federal Land Bank Ass'n of Tyler v. Sloane*, a party has a legal duty to use reasonable care when supplying information in the course of its business for the guidance of others in their business, and this duty exists independent of any contractual obligation. 825 S.W.2d 439, 442 (Tex. 1991)."); *McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463, 475 (5th Cir. 2015) ("A statutory offender will not be shielded from liability [under the Texas Deceptive Trade Practices Act] simply by showing its violation also violated a contract."); *Collections Fine Jewelry, Inc. v. Stanley Convergent Sec. Sols., Inc.*, No. 3:11-CV-3230-N, 2012 WL 12884572, at *3 (N.D. Tex. Aug. 29, 2012) ("But, where a plaintiff alleges that the defendant represented that he or she would provide a certain good or service and the defendant then fails to provide that good or service, the plaintiff successfully alleges more than a mere breach of contract claim.").

Because Polar Pro's fraud, negligent misrepresentation, and Deceptive Trade Practices Act claims are based on FrogSlayer's alleged misrepresentations and not solely on the alleged contract breach, and because Polar Pro alleges that FrogSlayer's tortious conduct was an independent source of injury to Polar Pro, the economic-loss doctrine does not bar the fraud claim Polar Pro asserts. FrogSlayer's motion to dismiss the fraud-based claim is denied.

## IV. Conclusion

FrogSlayer's motion to dismiss, (Docket Entry No. 31), is denied.

SIGNED on April 27, 2020, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge